UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATIF BEAG,

       Petitioner,

                                          CASE NO. 05-CV-72959-DT
v.                                          JUDGE NANCY G. EDMUNDS
                                          MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE LAFLER,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

1.     Petitioner Latif Beag is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.     Petitioner was originally charged with three counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; one count of possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; one count of carrying a concealed weapon, MICH. COMP. LAWS § 750.227; one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and two counts resisting and obstructing arrest, MICH. COMP. LAWS § 750.479. On September 12, 2002, following a bench trial in the Wayne County Circuit Court, petitioner was convicted of one assault with intent to commit murder count, two counts of the lesser offense of felonious assault on the other two assault charges, and of all the remaining charges except for the concealed weapon

charge, which was dismissed. On September 26, 2002, he was sentenced as a habitual offender, fourth offense, MICH. COMP. LAWS § 769.12, to concurrent terms of 15-30 years' imprisonment on the assault with intent to commit murder conviction, 2-4 years' imprisonment on each of the felonious assault convictions, 3-5 years' imprisonment on the felon in possession conviction, and 1-2 years' imprisonment on each of the resisting arrest convictions. Petitioner was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, a single claim:

> THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT INTENDED TO KILL OFFICER SVEC.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Beag*, No. 247642, 2004 WL 2126761 (Mich. Ct. App. Sept. 23, 2004) (per curiam).

    4.    Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Beag*, 472 Mich. 917, 696 N.W.2d 713 (2005).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 28, 2005. As grounds for the writ of habeas corpus, he raises the sufficiency of the evidence claim that he raised in the state courts.

    6.    Respondent filed his answer on February 2, 2006. He contends that petitioner's claim is without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arose from a shooting incident outside Mark's Bar, after the police had arrived on the scene. The evidence presented at petitioner's trial was accurately summarized in

petitioner's brief in the Michigan Court of Appeals. Specifically relevant to the assault charge which petitioner challenges here was the testimony of the four police officers on the scene:

> Defendant was charged in count two with assaulting with intent to murder Officer John Svec. Officer Svec testified that, on February 17, 2002, he and his partner, Officer Connor, responded to a report of gunshots at Mark's Bar at 8815 Grand River. When they arrived, there were people milling around in front of the bar. As soon as the officers exited their vehicle, a man, whom Svec identified as Defendant, fired two shots at another man, later determined to be Jamil Goodwin. Defendant had a revolver. Goodwin was standing in the open doorway. (II 28-29, 38). Defendant was standing in front of the door, a little to the east. (II 37). Svec was about seven yards from him. (II 40). Goodwin ran back inside. (II 29). Svec ordered Defendant to drop the weapon. Defendant turned and fired one shot "in . . . our direction." (II 30). Defendant dropped the revolver, right where the shooting had occurred, and walked east on Grand River. Svec retrieved the weapon. (II 31-32). Svec tried to assist Connor, but people were milling around, and someone stood in Svec's way. (II 32-33). Svec forced this man to the ground, and arrested him. (II 33). By then, Defendant was in custody. (II 33). Svec determined that there were three spent casings and three live rounds in the gun, a six shooter. (II 34-35).
>
> Defendant was charged in count three with assaulting with intent to murder Officer Ryan Connor, but was acquitted of the higher charge. Connor testified that he saw Defendant outside the bar, firing two shots at Goodwin, who was in "the doorway area" in front of the bar. (II 6-7, 18). The two men were about five or six feet apart. (II 7, 18, 22). Defendant had the gun at chest level. (II 7). Connor ordered Defendant to drop his weapon. Instead, Defendant "turned in our direction, and fired a shot at us." (II 8). When the prosecutor asked Connor if the gun had been aimed at him, Connor responded in the affirmative. (II 13). Defendant took off, and Connor chased him on foot. Defendant dropped the revolver. (II 9). They ran 20 or 30 feet, to the end of the block, where Defendant jumped into a Cadillac. With the help of Officer Vincent Bastine, Defendant was forcibly removed from the car, resisting and swinging his fists. (II 10). Defendant kicked Bastine in the leg as Bastine was placing Defendant in the scout car. (II 11). Bastine pepper sprayed Defendant. (II 11).
> \* \* \* \*
> . . . . [Officer Vincent] Bastine testified that, as soon as he arrived at the bar, he saw Defendant firing two shots at another man, who was in front of the bar. Defendant was on the sidewalk, facing the bar, with his back to the officer. (II 51-52, 57, 59). There were about ten people outside. (II 58). Defendant then turned around and fired one shot "in the direction of two other officers." (II 51-52). Defendant tossed the weapon, and ran to a parked red 1996 Cadillac. He got inside the car, on the passenger's side, and it started to move. Bastine grabbed to the door [sic] and pulled Defendant out. (II 53, 61, 63). When Bastine tried to put Defendant in the patrol car, Defendant kicked him in the leg. (II 54).
>
> Officer Dennard gave testimony consistent with that of his partner, Officer Bastine. (II 66-75). As to the third shot, Dennard testified that Officers Svec and

>Connor were standing by their scout car, and that Defendant fired a shot "towards the scout car, towards the officers." (II 66).

Def.'s Br. on Appeal, in *People v. Beag*, No. (Mich. Ct. App.), at 1-3. Petitioner presented several witnesses, each of whom testified that they did not see petitioner with a gun or witness him shoot at anyone. *See* Waiver Trial Tr., Vol. II, at 101-02, 115, 122. Petitioner also testified on his own behalf, denying that he had a gun or shot at anyone. *See id.*, Vol. III, at 7-9, 11.

At the conclusion of the trial, the judge found petitioner guilty of one of the three counts of assault with intent to commit murder. With respect to the count arising from the shooting of Jamil Goodwin, the court concluded that it could not find petitioner guilty beyond a reasonable doubt of assaulting Goodwin with the intent to murder him based on the relationship of petitioner and Goodwin, and the proximity of the two when the shots were fired. *See id.* at 46. With respect to the remaining two counts of assault with intent to commit murder, relating to the shots fired at Officers Svec and Connor, the court found:

>I'm satisfied that given the Defendant's conduct, his apparent anger, his desire to get away, the distance between him and the officers, and the fact that he was shooting at chest level, that he intended to kill one of those officers.
>And I believe it was Officer Svec, who testified that the gun was pointed at his, in his direction.
>The other officer testified it was pointed in their direction. But I believe with one shot I cannot find assault with intent to murder with regard to both those counts, but just one.
>So Count Two, guilty of assault with intent to commit murder.
>Count Three, guilty of felonious assault.

*Id.* at 46-47. The trial court also found petitioner guilty on the remaining charges, except for the concealed weapon charge, which was dismissed on the prosecutor's motion. *See id.* at 47.

D.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

4

132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21

(citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Analysis*

As his sole ground for habeas relief, petitioner contends that the prosecution presented insufficient evidence to establish beyond a reasonable doubt his guilt on the assault with intent to commit murder charge. The Court should conclude that petitioner is not entitled to habeas relief on

this claim.

    1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

    2.    *Elements of Assault with Intent to Commit Murder*

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197,

7

211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of assault with intent to commit murder under Michigan law. Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.83. Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)). Further, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence. *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

   3. *Sufficiency of the Evidence*

Petitioner argues that the prosecution presented insufficient evidence to show that he had the specific intent to kill anyone in general, and Officer Svec in particular. The Michigan Court of Appeals rejected petitioner's claim, reasoning:

> The evidence showed that the police were dispatched to a bar to investigate a shooting. They arrived to find defendant in possession of a weapon. When they ordered defendant to drop the weapon, he turned, aimed at one of the officers, and fired. Although defendant did not express an intent to kill the officer and did not succeed in inflicting any injuries, the intentional discharge of a firearm at someone within range, done under circumstances that did not justify, excuse, or mitigate the crime, is sufficient to prove assault with intent to commit murder.

*Beag*, 2004 WL 2126761, at *2, slip op. at 2. The Court should conclude that this determination was reasonable, and thus that petitioner is not entitled to habeas relief.

Petitioner argues that there was insufficient evidence of an intent to kill because he did not express such an intent, succeed in wounding anyone, or repeatedly fire at the officers. He contends that, in light of the evidence presented, it was equally likely that he was acting in the heat of the moment and firing randomly in an attempt to frighten the officers and escape the scene. While each of these arguments may be true, they do not compel the conclusion that the evidence was insufficient. As explained above, it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren*, 161 F.3d at 361 (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)). Thus, even in the absence of any evidence that he expressed an intent to kill or succeeded in injuring the person at whom he was firing, his firing of a gun at Officer Svec alone is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill Officer Svec. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 706 (1974). Further, the fact that the evidence may have supported another version of events–that petitioner was firing randomly to aid his escape–is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326.

Petitioner also contends that, even if there is sufficient evidence that he intended to kill one of the officers, that person was not Officer Svec. He argues that the trial court erred in concluding that it was Officer Svec who testified that the gun was pointed directly at him. Rather, petitioner contends, it was Officer Connor who so testified, whereas Officer Svec only testified that the gun was pointed at him and Connor in general. Petitioner therefore argues that there was insufficient evidence

to find that he had the specific intent to kill Officer Svec, and that he cannot be found guilty with respect to Officer Connor because the trial court specifically found that he did not have the intent to kill Officer Connor. However, Officer Svec did testify that petitioner had pointed the gun at both him and Connor, and that he feared the bullet was going to hit him. *See* Trial Tr., Vol. II, at 30. Nothing in Officer Connor's testimony that the gun was pointed at him precludes the conclusion that the gun was also pointed at Officer Svec. The two were in close proximity, and the situation was fluid and rapidly evolving. In short, the evidence was sufficient, if believed, to establish beyond a reasonable doubt that petitioner intended to kill both Svec and Connor. Because the trial judge felt that a conviction on both charges could not be sustained from the firing of one shot, he chose to find petitioner guilty on the charge relating to Svec. That the evidence would also have been sufficient to find that petitioner intended to kill Connor, does not preclude the conclusion that the evidence was sufficient to show that petitioner intended to kill Svec. And it certainly cannot be said, under the deferential standard of review applicable here, that the Michigan Court of Appeals's conclusion to this effect was unreasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.       *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claim did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 12/5/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 5, 2006.
>
> s/Eddrey Butts
> Case Manager

11